DECISION AND JUDGMENT ENTRY
{¶ 1} Inland Products, Inc. appeals from a Lawrence County Common Pleas Court judgment denying its motion to set aside a sale of real property following an in rem foreclosure proceeding. Inland argues the departures from the notice requirements in R.C.5721.18(B)(1) abrogated the statutory notice provision. Inland further argues that this abrogation of the statutory notice provision renders the title from the tax sale invalid. We agree. Upon reviewing the record, we conclude the combination of errors involving the notification by publication resulted in the abrogation of the statutory provision for notice. Thus, the title acquired by the purchasers at the tax sale is invalid. For that reason, we reverse the court's judgment denying Inland's motion and remand for further proceedings.
 I. {¶ 2} This case involves the sale of two parcels of land to satisfy unpaid property taxes. At the time of the sale, the tax record listed the owner of the parcels as Brothers Realty 
Investment Company. However, Brothers Realty merged with Inland Products, Inc. in 1982.
 {¶ 3} On April 18, 2003, the Lawrence County Treasurer initiated proceedings to foreclose tax liens on some eight hundred properties, including the two parcels at issue here. The Lawrence County Clerk of Courts began sending notice of the foreclosure to property owners on May 16, 2003. Because of the number of properties involved, the clerk of courts sent the notices over the course of several days. Notice was sent to Brothers Realty, as the last known owners, on May 21, 2003.[1] According to the tax record, the tax mailing address for the two parcels was Post Office Box 926, Columbus, Ohio. Therefore, the clerk of courts sent notice both by certified and ordinary mail to that address. However, the notices were returned by the United States Post Office marked "Insufficient Address."
 {¶ 4} In addition to mailing notices to the owners, the Lawrence County Clerk of Courts also arranged for a notice of the foreclosure to be published in The Ironton Tribune. The Ironton Tribune published the notice on May 21, May 28, and June 4, 2003. Because of the number of properties involved in the action, the notice did not contain a legal description of each property. Instead, the notice identified the properties by their parcel number. The following statement appeared after the list of parcel numbers: "A COMPLETE LIST IS AVAILABLE FOR VIEWING AT THE LAWRENCE COUNTY PROSECUTOR'S OFFICE * * * MONDAY THROUGH FRIDAY, FROM 8:30 A.M. TO 4:00 P.M."
 {¶ 5} Inland neither responded to the notices nor paid its outstanding taxes. Thus, in July 2003, the trial court entered a default judgment with respect to the two parcels of land. Both parcels were eventually sold at a sheriff's sale to Danny and Dustin Holschuh. In November 2003, the trial court issued an entry confirming the sale.
 {¶ 6} Inland learned that the sheriff had sold its property after a neighbor told Inland about the presence of surveyors on the land. In July 2004, Inland filed a motion seeking to set aside the sale of the parcels. In the motion, Inland claimed that it had notified the Lawrence County Treasurer's Office of a change in address. It argued that the state violated due process by sending notice of the foreclosure to its previous address rather than the new address. In addition, Inland argued that the state failed to comply with the statutory notice requirements for in rem tax lien foreclosures.
 {¶ 7} In January 2005, the magistrate held a hearing on Inland's motion. At the hearing, Linda Kelley, a Deputy Clerk with the Lawrence County Clerk of Courts, testified about the court file and appearance docket for the case. She testified that the appearance docket indicates that notice of the foreclosure was sent to property owners on May 16, 2003. However, she testified that because there were so many property owners involved, the clerk's office sent the notices over several days. Ms. Kelley testified that the court file contains four notices addressed to Brothers Realty at Post Office Box 926, Columbus Ohio.[2] All of the notices bear a postmark dated May 21, 1999. When questioned, Ms. Kelley indicated that the clerk's office places the postmark on the envelopes prior to mailing. She indicated that the postmark date on the notices to Brothers Realty is most likely an error and should instead be May 21, 2003. Ms. Kelley testified that the notices sent to Brothers Realty were returned by the post office marked "Insufficient Address."
 {¶ 8} In addition to testifying about the mailed notices, Ms. Kelley also testified about the notification by publication. Ms. Kelley testified that the appearance docket contains no entries regarding publication of the notice. Additionally, she indicated that there is no evidence of publication in the court file. She testified that the court file does not contain a copy of the published notice or an affidavit from the publisher stating the fact of the publication. However, she testified that the night before the magistrate's hearing, the publisher of the Ironton Tribune faxed the clerk's office an affidavit indicating that it had published the notice. The affidavit, dated January 12, 2005, states that notice of the foreclosure action was published in the Ironton Tribune on "May 21, May 28, and June 4, 2005." Copies of the published notice subsequently admitted into evidence show that the notice was actually published on May 21, May 28, and June 4, 2003.
 {¶ 9} The magistrate also heard testimony from Al Borderlon, Inland's Special Projects Executive. Mr. Borderlon testified that he is responsible for taking care of Inland's real estate matters. He testified that in early 1994, the post office changed Inland's post office box number from 926 to 2228. At that time, Inland sent a letter about the address change to the treasurer's offices in those counties where Inland owned property. Mr. Borderlon testified that he is certain such a letter was sent to the Lawrence County Treasurer's Office. Mr. Borderlon also testified that he personally notified the Lawrence County Treasurer's Office of Inland's address change. He testified that sometime between 1994 and 1997, he visited the Lawrence County Courthouse on an unrelated matter. While there, he stopped at the treasurer's office to inform them that they were sending the tax bills for the two parcels to the wrong address. Mr. Borderlon indicated that he spoke with a woman in the treasurer's office and explained that Brothers Realty had merged with Inland Products. He testified that he then wrote out Inland's correct address on a piece of paper provided by the woman.
 {¶ 10} Cindy Marshall, a Deputy Treasurer for the Lawrence County Treasurer's Office, testified that members of the public regularly come into the office to change the address on their tax bill. If the computer system is running, the office employees enter the address change into the computer immediately. If the computer system is shut down, the employees note the address change in tablets. The employees then enter the information from their tablets into the computer once the system is running again. Ms. Marshall testified that she examined the tax records as far back as 1991 and found no change of address for the parcels at issue.
 {¶ 11} The testimony of Christopher Kline, Chief Deputy Auditor for the Lawrence County Auditor's Office, established that the procedure for changing addresses at the auditor's office is similar to that at the treasurer's office. Mr. Kline testified that his examination of the tax records did not show any change of address for the parcels at issue. He testified that, to the best of his knowledge, the address for the two parcels has not changed in the past fourteen years.
 {¶ 12} In March 2005, the magistrate issued his findings of fact and conclusions of law. The magistrate found that notice of the foreclosure was sent to Inland's last known address of record. He concluded that this notice satisfied due process requirements even though it was sent after the statutorily required time. As for notice by publication, the magistrate found that the probability of an absentee property owner seeing a publication in the local newspaper is "extremely remote." He held that the fact that notice of the foreclosure was published later than statutorily required is inconsequential given this remote probability. Moreover, he held that the injury suffered by Inland resulted from the incorrect address being on record, not from any procedural defects in the publication of notice. The magistrate noted that Inland had a statutory duty both to pay its taxes and to inform the treasurer's office of any change in its mailing address. He noted that the failure to receive a tax bill does not excuse the nonpayment of taxes. In the end, the magistrate denied Inland's motion to set aside the tax sale.
 {¶ 13} Inland subsequently filed objections to the magistrate's decision with the trial court. In late 2005, however, the court overruled Inland's objections and adopted the magistrate's decision. Inland now appeals, raising the following assignments of error:
I. "THE COMMON PLEAS COURT ERRED BY NOT SUSTAINING APPELLANT'S MOTION TO SET ASIDE THE TAX SALE IN LIGHT OF NO INDICATION FROM THE RECORD THAT SERVICE OF PROCESS BY PUBLICATION HAD OCCURRED."
II. "THE LOWER COURT ERRED IN FAILING TO FIND THAT THE STATUTORY NOTICE REQUIREMENTS OF R.C. 5721.18 HAD BEEN ABROGATED WHEN NUMEROUS DEPARTURES FROM THE STATUTORY MANDATES WERE APPARENT FROM THE RECORD."
III. "THE LOWER COURT ERRED WHEN IT FAILED TO SET ASIDE THE TAX SALE AFTER THE COUNTY TREASURER WAS NOTIFIED IN WRITING OF THE CHANGE OF THE TAXPAYER'S ADDRESS."
 II. {¶ 14} Because it is dispositive, we begin by addressing Inland's second assignment of error. In this assignment of error, Inland contends the trial court erred by failing to set aside the tax sale despite numerous departures from the notice requirements in R.C. 5721.18(B). It notes that under R.C. 5721.19(F)(4), title acquired in a tax sale is invalid if irregularities or omissions in the proceedings abrogate the statutory provision for notice to holders of title. It contends the irregularities in this case resulted in the abrogation of the statutory notice provision.
 {¶ 15} The state brought this foreclosure action under R.C.5721.18(C), which provides that an action commenced under that division shall conform to all of the requirements of R.C.5721.18(B) with certain exceptions.[3] R.C. 5721.18(B) sets forth the procedures the state must follow in an in rem tax lien foreclosure. In particular, R.C. 5721.18(B) sets forth the manner by which the state is to provide notice of the foreclosure to the property owners. It states:
(1) Within thirty days after the filing of the complaint, the clerk of the court in which the complaint was filed shall cause a notice of foreclosure * * * to be published once a week for three consecutive weeks in a newspaper of general circulation in the county. In any county that has adopted a permanent parcel number system, the parcel may be described in the notice by parcel number only, instead of also with a complete legal description, if the prosecuting attorney determines that the publication of the complete legal description is not necessary to provide reasonable notice of the foreclosure proceeding to the interested parties. If the complete legal description is not published, the notice shall indicate where the complete legal description may be obtained.
After the third publication, the publisher shall file with the clerk of the court an affidavit stating the fact of the publication and including a copy of the notice of foreclosure as published. Service of process for purposes of the action in rem shall be considered as complete on the date of the last publication.
Within thirty days after the filing of a complaint and before the final date of publication of the notice of foreclosure, the clerk of the court also shall cause a copy of a notice * * * to be mailed by certified mail, with postage prepaid, to each person named in the complaint as being the last known owner of a parcel included in it * * *. The notice shall be sent to the address of each such person, as set forth in the complaint, and the clerk shall enter the fact of such mailing upon the appearance docket. If the name and address of the last known owner of a parcel included in a complaint is not set forth in it, the auditor shall file an affidavit with the clerk stating that the name and address of the last known owner does not appear on the general tax list. R.C. 5721.18(B)(1).
 {¶ 16} The present action was filed on April 18, 2003. However, the first notice of the foreclosure action did not appear in the Ironton Tribune until May 21, 2003, thirty-three days after the complaint was filed. The published notice did not contain a complete legal description of the properties. Nor did it indicate where a complete legal description could be obtained. After the list of parcel numbers, the notice contained a statement indicating that "a complete list" was available for viewing at the prosecutor's office. However, this does not tell the reader where to obtain a complete legal description. Rather, it seems to indicate that the list of properties contained in the notice is incomplete. The notice of foreclosure in this case appeared in the Ironton Tribune once a week for three weeks. However, the publisher did not file an affidavit with the court after the third publication. Nor did he file a copy of the published notice with the court. Thus, at the time the court issued the default judgment, the court file contained no evidence of publication. In fact, it was not until the night before the magistrate's hearing that the publisher provided an affidavit stating the fact of the publication. That affidavit indicated that publication of the notice occurred on "May 21, May 28, and June 4, 2005." Copies of the notice subsequently admitted into evidence reveal that the affidavit's reference to 2005 is erroneous, and that publication actually occurred in 2003.
 {¶ 17} In describing the notice procedure for in rem tax lien foreclosures, R.C. 5721.18(B)(1) uses the word "shall." The word "shall" is construed as mandatory "unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage." Ohio Civ. RightsComm. v. Countrywide Home Loans, Inc., 99 Ohio St.3d 522,2003-Ohio-4358, 794 N.E.2d 56, at ¶ 4, quoting Dorrian v. SciotoConservancy Dist. (1971), 27 Ohio St.2d 102, 271 N.E.2d 834, paragraph one of the syllabus. Because no such legislative intent appears in R.C. 5721.18(B)(1), the requirements are mandatory. However, R.C. 5721.19(F)(4) provides that after confirmation of a tax sale, "[t]he title shall not be invalid because of any irregularity, informality, or omission of any of the proceedings under this chapter if such irregularity, informality, or omission does not abrogate the provision for notice to holders of title * * * as prescribed in this title." Thus, although the notice procedures in R.C. 5721.18(B)(1) are mandatory, irregularities in those procedures will not invalidate the title unless the irregularities abrogate the statutory provision for notice. See R.C. 5721.19(F)(4).
 {¶ 18} Considering the errors in this case separately, we cannot say that any one error abrogated the statutory provision for notification by publication. Instead, it is the combination of errors involving notification by publication that resulted in the abrogation of the statutory provision. In this case, compliance with the statutory requirements for notification by publication was minimal, at best. The record shows that notice of the foreclosure action appeared in a paper of general circulation once a week for three consecutive weeks. However, none of the other requirements for notification by publication were satisfied. The record reveals that the notice of foreclosure was not published within thirty days of the filing of the complaint. Additionally, the published notice did not contain a complete legal description of the properties or indicate where a complete legal description could be obtained. Finally, the publisher did not file an affidavit stating the fact of the publication following the third publication. It was not until the hearing on Inland's motion that the publisher provided an affidavit attesting to the fact of publication. And when the publisher finally did provide an affidavit, the affidavit stated that publication of the notice occurred on dates that had yet to pass.
 {¶ 19} Appellees argue the errors in the notification by publication are not the cause of Inland's failure to receive notice. They argue that Inland did not receive notice of the foreclosure action because the incorrect address was on file with the treasurer's office. They note that under R.C. 323.13, Inland had a duty to inform the treasurer's office of any change in its tax mailing address.
 {¶ 20} Assuming, arguendo, that Inland failed to comply with a statutory obligation to keep its address updated, this failure does not discharge the state's obligation to comply with the statutory requirements for notification by publication. R.C.5721.18(B)(1) provides for notification both by mail and publication. See In Re Foreclosure of Tax Liens for DelinquentTaxes (1980), 62 Ohio St.2d 333, 336, 405 N.E.2d 1030. Specifically, R.C. 5721.18(B)(1) provides for notification by publication concomitantly to notification by mail. See Id. In this case, the notification by mail was unsuccessful and the notification by publication was riddled with errors.
 {¶ 21} Had Inland received actual notice of the foreclosure action, the state's departures from the statutory requirements for notification by publication would not be relevant. However, Inland did not receive actual notice of the action. Thus, ensuring that the state complied with the letter of the law takes on greater importance. The state exerts extraordinary power against a property owner when it takes property and sells it to satisfy unpaid taxes. See Jones v. Flowers (2006), 547 U.S. __,126 S.Ct. 1708, 164 L.Ed.2d 415.[4] Before the state can take property and sell it, due process requires that the state provide the property owner with notice of the action affecting the property. See Mullane v. Central Hanover Bank Trust Co.
(1950), 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865. R.C.5721.18(B)(1) sets forth the procedure by which the state is to notify property owners of an in rem tax lien foreclosure. In particular, R.C. 5721.18(B)(1) provides for notification both by mail and publication. See In re Foreclosure of Tax Liens,62 Ohio St.2d at 336. In this case, the notification by publication contained numerous errors. Because the combination of those errors resulted in the abrogation of the statutory provision for notice, the title from the tax sale is invalid. See R.C.5721.19(F)(4). Thus, the court erred in denying Inland's motion to set aside the sale.
(¶ 22) In its other two assignments of error, Inland sets forth additional arguments for why the trial court erred in denying the motion to set aside the sale. However, our resolution of Inland's second assignment of error renders the remaining assignments of error moot. App.R. 12(A)(1)(c). Thus, we need not address these additional arguments.
 {¶ 23} Because the trial court erred in denying Inland's motion to set aside the tax sale, we reverse the court's judgment and remand this cause for further proceedings consistent with this opinion.
JUDGMENT REVERSED AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J.: Concurs in Judgment and Opinion. McFarland, J.: Dissents.
[1] The postmark on the envelopes indicates that the notices were sent on May 21, 1999. Inland concedes that the year evidenced in the postmark is most likely an error and should instead be 2003.
[2] The file contains four notices because the clerk of courts sent notices for each parcel by both certified and ordinary mail.
[3] The exceptions contained in R.C. 5721.18(C)(1)-(4) are not relevant to the issues presented in this appeal.
[4] While this case was pending on appeal, the United States Supreme Court issued its decision in Jones. A strong argument exists that the decision in Jones provides grounds for reversal in this case. However, because the errors involving the statutory notice requirements provide an independent basis for reversal, we must decide the case on that basis. See State ex rel. Crabtreev. Bureau of Workers Comp., 71 Ohio St.3d 504, 507,1994-Ohio-474, 644 N.E.2d 361 (noting that when a court can decide a case on a non-constitutional basis, it is bound to do so.)